[Civ. No. 811.   Third Appellate District.—January 31, 1911.]

ANNIE E. WOOD, Respondent, v. HENRY W. JAMES, Administrator of the Estate of MARY J. JAMES, Deceased, Appellant.

ESTATES OF DECEASED PERSONS—REJECTED CLAIMS OF DAUGHTER—SERVICES AS NURSE—PLEADING—UNCERTAINTY—CONSTRUCTION—ADMISSION—FINDING—WAIVER OF VARIANCE.—Where a rejected claim of a daughter against the estate of her deceased mother was "for services as nurse for 204 days," between certain dates, "at $2.50 per day, $510," and the complaint thereon alleged services between said dates "as nurse to Mary J. James, at her request and for her use and benefit, performing at such time and times in said capacity of a nurse all the duties of a nurse, including the cooking, housekeeping, laundering, and caring for the said Mary J. James, during her last illness, which services were and are reasonably worth the sum of $2.50 per day," it is held that the duties of a nurse do not include the particular services specified, but that, in the absence of a demurrer for uncertainty, and in view of the

admission of defendant and the finding of the court that her services as a nurse were worth $2.50 per day, during the time claimed, the complaint may be construed as so asserting, and defendant has no cause to complain that there is a variance between the claim filed and the complaint.

ID.—COMPENSATION FOR SERVICES OF CHILD—RULE AND EXCEPTION—CONTRACT FOR SERVICES.—Though, as a general rule, a child who lives with a parent is not entitled to compensation for services rendered to the parent, even if an adult, yet the parent may contract to pay for such services, especially when the parent and child do not live together.

ID.—SUPPORT OF FINDING AS TO EXPRESS CONTRACT.—A finding as to an express contract of the sick mother, in this case, to pay her daughter for her services as nurse, is sufficiently supported by evidence that when the mother became afflicted with paralysis she requested her neighbor to call a doctor and a nurse, and the daughter, who lived in another county, was sent for, as a nurse, and after she came the mother told the neighbor to request her to remain and she would pay her for her services, and she remained and served as a nurse until her mother's death.

ID.—DIRECT CONTRACT BY DAUGHTER WITH MOTHER INCAPABLE OF PROOF. It is no objection to such finding that the evidence shows no direct contract between the daughter and her mother, as no such evidence is admissible under section 1880 of the Code of Civil Procedure, which closes the lips of the plaintiff, and does not permit her to testify thereto.

ID.—ABSENCE OF SUSPICIOUS CIRCUMSTANCES AS TO CLAIM FOR SERVICES—PRESUMPTION.—It is held that no suspicion can arise as to the claim of the daughter for her services as a nurse to her mother under the facts appearing; and it must be presumed that any unknown circumstances, not disclosed by the record, were such as supported the fairness of the contract, and repelled any suspicion of its not having been made in good faith.

APPEAL from a judgment of the Superior Court of Solano County.   A. J. Buckles, Judge.

The facts are stated in the opinion of the court.

F. E. Johnston, and L. E. Johnston, for Appellant.

Harvey & Goodman, for Respondent.

CHIPMAN, P. J.—Plaintiff sues to recover on a rejected claim against the estate of deceased.   The claim presented to the administrator reads as follows:

"Estate of Mary J. James, deceased.

 "To Annie E. Wood, Dr.

        "November 26th, 1909.

"For services as nurse for Mary J. James, 204 days, from January 30th, 1909, to August 21, 1909, at $2.50 per day ......$510.00." Duly verified. Indorsed: "The within claim rejected this 15th day of February, 1910. H. W. James, Administrator."

The charging paragraph of the complaint is as follows: "That within two years last past, to wit, from January 30, 1909, to August 21, 1909, at and in Solano county, California, plaintiff rendered services as nurse to Mary J. James at her request and for her use and benefit, performing at such time and times in said capacity as nurse all the duties of a nurse, including the cooking, housekeeping, laundering and caring for the said Mary J. James during her last illness, which services were, and are, reasonably worth the sum of $2.50 per day."

Defendant answered the complaint, without demurring thereto, and made specific denials of all its averments, except that defendant admitted the presentation of the claim as shown by plaintiff's Exhibit "A," but denied "that said claim was for the same services as alleged in the complaint herein."

The court made the following finding: "That within two years last past, to wit, from January 30, 1909, to August 21, 1909, at and in Solano county, California, plaintiff rendered services as nurse to Mary J. James, at her request and for her use and benefit, performing at such time and times all the duties of a nurse, which services were, and are, reasonably worth the sum of $2.50 per day; that said Mary J. James during her lifetime promised to pay for said services; that nothing had been paid for or on account of said services; that the claim attached to said complaint and made a part thereof is the claim presented by plaintiff to defendant, and is for the same services as sued for in the complaint of plaintiff herein." Judgment passed accordingly, from which defendant appeals on bill of exceptions.

The evidence is brief. It was admitted by plaintiff that she was the daughter of deceased. Defendant admitted "that $2.50 per day was a reasonable value for the services of a

nurse to decedent, and was a reasonable compensation to plaintiff for her services to her mother—if she was entitled to any compensation at all.'' Defendant made this admission, ''reserving at all times his objection to any testimony being given or received to support the allegations of plaintiff's complaint.'' Defendant further admitted that plaintiff had cared for her mother during the period claimed, to the date of her mother's death.

Mrs. Rose McLaughlin was the only witness sworn. She testified that she was a neighbor of Mrs. James in her lifetime, ''and when she received a stroke of paralysis, she went to see her. Mrs. James said she wanted a doctor and a nurse, and they were sent for and came; Mrs. Wood [plaintiff] lived in St. Helena, Napa county, California, and the doctor notified her, and she came to her mother's house soon after her mother was taken sick and cared for her till her mother's death.'' Plaintiff then offered to prove certain conversations, statements and declarations made to witness by Mrs. James during her illness, ''for the purpose of proving an express contract and agreement on the part of decedent, Mrs. James, to pay plaintiff, her daughter, for taking care of her during her illness.'' Defendant objected to the evidence on the ground of irrelevancy and immateriality, for the reason that it was not within the issues made by the pleadings; that plaintiff had not sued upon an express contract, nor based her claim as presented against the estate upon an express contract, and should not be permitted to prove such a contract; that the claim sued on was not the same claims presented to the estate. The court overruled the objection, and defendant duly excepted. The witness testified: ''During the time plaintiff was taking care of her mother, during her mother's illness—I do not remember the exact date, but it was some time after Mrs. Wood came to take care of her mother, Mrs. James said to me, referring to Mrs. Wood: 'Tell Annie to stay and I will pay her.' Another time she said: 'Don't let Annie go; she shall be paid.' I communicated the statements to Mrs. Wood, but not in her mother's presence, and she said: 'I will stay with mother; I haven't intended to leave her.' '' The record then states: ''The above is all of the testimony given or offered on behalf of the plaintiff, proving, or tending to prove, an express

agreement by Mrs. James to pay her daughter for her said services."

Defendant moved for a nonsuit on the grounds: 1. That there was a fatal variance between the claim presented and the claim sued on; 2. That there was a like variance between the allegations of the complaint and the proof adduced in its support; 3. The proof was insufficient to justify a finding of an express contract.

Respondent concedes the point made by appellant that the law does not raise an implied contract to compensate a daughter for services rendered her mother, and she also concedes that it was necessary to prove an express contract to pay her for her services. She contends that if an express contract to pay is shown, she may show the reasonable value of the services without showing an express contract as to the value of the services.

The claim presented was "for services as nurse," and the complaint claims for services as nurse, "including the cooking, housekeeping, laundering and caring for the said Mary J. James." The court found that plaintiff had "rendered services as a nurse, . . . performing at such time and times all the duties of a nurse, . . ." and that Mrs. James "during her lifetime promised to pay for said services." Defendant "admitted that $2.50 per day was a reasonable value for the services of a nurse to decedent and was a reasonable compensation to plaintiff for her services to her mother."

It seems to us that there is no variance between the claim presented and the claim alleged in the complaint and found by the court, except as such variance may arise from the averment in the complaint—"including the cooking, housekeeping, laundering and caring for" Mrs. James. It does not appear whether the pleader intended by this averment to make these additional services a necessary part of the nurse's duties for which the compensation is claimed. The term "nurse" as commonly understood would not include "cooking," "housekeeping" or "laundering." There was no demurrer to the complaint for uncertainty or indefiniteness, and it seems to us that the complaint may reasonably be said to mean that plaintiff performed services as nurse, and in addition thereto performed these other services, but that her claim was for nursing. And this view is supported

by the admission of defendant that plaintiff's "services as a nurse" were of the value of $2.50 per day as claimed by plaintiff. Defendant having admitted that plaintiff's "services as nurse" were of the value of $2.50 per day, and the court having so found, he has no cause for complaint on any ground of variance between the claim filed and the complaint.

The sole question, as we view the case, is, Does the evidence support the finding of an express contract to pay for the services rendered? Plaintiff resided in an adjoining county and left her home to attend her mother in her sickness. There is no evidence that she went to her mother's bedside under any promise or expectation of compensation for services she might render. This, however, does not change the fact, if it was the fact, that her mother subsequently agreed to compensate her for her services. Her mother must have had some apprehension that her daughter might not remain to the end, and so sent word to her to remain and she would pay her. Her message was: "Tell Annie to stay and I will pay her." She then at another time told the witness, Mrs. McLaughlin: "Don't let Annie go; she shall be paid." Plaintiff replied: "I will stay with mother." She said: "I haven't intended to leave her"; but this is not inconsistent with her willingness to receive pay for her services or with her remaining under a promise to be paid by her mother. Defendant suggests that there is no evidence that plaintiff's mother ever spoke to plaintiff about compensating her, nor could there be, for the law closed the lips of plaintiff, and did not permit her to testify to such fact. (Code Civ. Proc., sec. 1880.)

Defendant cites cases to show that mere general expressions, such as used by Mrs. James, are not sufficient to show an express contract. The intention of the promisor is not always to be determined from the language used. Where, as in some of the cases cited, a son or daughter, living with the parent, makes claim for similar services, the circumstances may be such as to justify the court in holding the evidence insufficient to establish an express contract, even though some expressions of gratitude and of an intention to pay for such services are shown. "Whenever compensation is claimed in any case by either parent or child against the other for services rendered, or the like, the question whether the claim should be allowed must be determined from the par-

ticular circumstances of the case. There can be no fixed rule governing alike all cases.'' (21 Ency. of Law, p. 1062.) As a general rule, a child who is living with its parent is not entitled to compensation for services rendered to the parent, even though an adult, but the parent may contract to pay the child for its services. (29 Cyc. 1630.) Where, however, ''the relation was not such as imposed any special obligation on the claimant of support of, care for, or tenderness toward the decedent, a claim for compensation will be more favorably regarded, and in a suitable case upheld, especially where decedent and claimant did not live together.'' (18 Cyc. 414.)

Mrs. Wood, the daughter, as we have seen, resided in another county from that of the decedent's residence; she left her own home to minister to her mother, whose malady was paralysis of uncertain duration. The daughter was told to remain and she would be paid, and she did remain until her mother's death.

The suspicion with which the courts sometimes look at claims of children against estates of deceased persons for personal services is more especially indulged where they live under the same roof and there are mutual dependent relations. Here no such suspicion can arise, and if there were circumstances influencing the mind of the learned trial court of which we have no knowledge, we must presume that they were such as supported the fairness of the contract, and repelled any ground for suspicion of its not having been made in good faith. No ground is shown why we should disturb the view of the evidence taken by the trial court.

The judgment is affirmed.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied in the supreme court on March 31, 1911.